IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 26, 2005 Session

## FRANK ROBERT BIGSBY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-50657    James K. Clayton, Jr., Judge**

—————————————

**No. M2004-01383-CCA-R3-PC - Filed May 31, 2005**

—————————————

The petitioner was convicted of possession of twenty-six (26) grams or more of cocaine with intent to deliver. He appealed this conviction. We affirmed his conviction in State v. Bigsby, 40 S.W.3d 87 (Tenn. Crim. App. 2000). The petitioner then filed a petition for post-conviction relief. The trial court denied the petitioner's petition. On appeal, we remanded the petition for the trial court to enter findings of fact. Frank Robert Bigsby v. State, No. M2002-02260-CCA-R3-PC, 2003 WL 22927139 (Tenn. Crim. App., at Nashville, Dec. 11, 2003). The trial court entered its findings, and we now address the appeal on the merits. The petitioner's sole issue in his appeal from the trial court's denial of his post-conviction petition is that he was offered ineffective assistance of counsel. We have reviewed the record in this case and conclude that the trial court's denial of the petitioner's petition was proper. Therefore, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Brad W. Hornsby and Kerry Knox, Murfreesboro, Tennessee, for the appellant, Frank Robert Bigsby.

Paul G. Summers, Attorney General & Reporter; Preston Shipp, Assistant Attorney General; Bill Whitesell, District Attorney General, and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The facts were recited by this Court in the petitioner's direct appeal, State v. Bigsby, 40 S.W.3d 87 (Tenn. Crim. App. 2000) as follows:

The defendant and co-defendant Willie Martin were first cousins. The defendant and his three co-defendants went to a house owned by Martin's brother, who was also the defendant's first cousin. Following a tip from a confidential informant concerning drug activity, patrol officer John Jones proceeded to the location at approximately 11:00 p.m. and witnessed a large number of persons entering and exiting the house over a period of fifteen minutes. Due to their prior arrests, he knew some of these individuals were drug users. Jones stopped one of the individuals and noticed he had a small rock of crack cocaine in his hand. Thereafter, he called for police assistance and knocked on the door.

When Martin answered the door, Jones informed him of his suspicions and asked if there was anyone else in the residence other than the people he could observe in the living room. Martin stated there was no one else in the house and invited the officer to search the other rooms. Jones searched the house for additional suspects. Upon his return to the living room, he noticed there was a small rock of crack cocaine on the table in front of where the defendant and two others were seated and a slightly larger rock on top of the television. When Jones began to question the suspects about the drugs, Martin revoked his consent to search the premises.

Thereafter, a search warrant was obtained. In addition to the .3 grams Jones observed in the living room, officers discovered 55.5 grams of cocaine under the bed in the purse of April Blivens, defendant's live-in girlfriend, and 3.9 grams of cocaine in Blivens' undergarments. However, a search of the defendant revealed no drugs, money or anything of value. The police also recovered from under the couch cushion in the living room some Tanitz scales, commonly used in the drug trade, and $1,914.00 in cash in a bedroom. The defendant and the three co-defendants were arrested.

At trial Martin testified that he had been living in Nashville for several months with the defendant and Blivens. He stated that they all came to Murfreesboro for the purpose of using his brother's home to sell drugs. When Martin was asked if he made the arrangements to secure his brother's home, he replied that the defendant, his brother's first cousin, did so. He subsequently reiterated that he (Martin) was not the one who asked his brother for the use of the house.

Martin further testified that the defendant and Blivens made their living selling drugs, although the defendant also received disability payments. He stated further that Blivens was the one actually selling the drugs on the date in question. Martin testified he did not see the defendant selling any drugs or receive any money from Blivens. According to Martin, the defendant was "just there."

The defendant was convicted of possession of 26 grams or more of cocaine with the intent to deliver.

Bigsby, 40 S.W.3d at 88-89 (footnotes omitted). On direct appeal, this court affirmed the petitioner's conviction. Id. at 91.

On May 10, 2001, the petitioner filed a pro se petition for post-conviction relief. An amended petition was filed through counsel on July 16, 2001. The post-conviction court dismissed the petition after holding an evidentiary hearing. The petitioner appealed the post-conviction court's decision to this Court. On appeal, we remanded the case to the post-conviction court because "the post-conviction court failed to make discernable findings of fact . . . ." Frank Robert Bigsby v. State, No. M2002-02260-CCA-R3-PC, 2003 WL 22927139, at *3 (Tenn. Crim. App., at Nashville, Dec.11, 2003). Upon remand, the post-conviction court entered a second order, on May 5, 2004, stating its findings of fact and conclusions of law. The petitioner then filed a timely notice of appeal.

## ANALYSIS

The petitioner argues that he was denied his constitutional right to the effective assistance of counsel for several reasons: (1) his trial attorney failed to object to the prosecution's insinuation that the petitioner's signature on an "evidence seizure" log was an admission of guilt; (2) his trial attorney failed to explain to the petitioner how long his sentence could be if he were convicted of criminal possession of an illegal substance as a persistent offender; (3) his trial attorney failed to properly interview a key witness or investigate the witness's prior statements implicating her client prior to trial; (4) his trial attorney failed to object to a co-defendant's trial testimony implicating the petitioner, even though the witness's answer was non-responsive; (5) his trial attorney failed to object to insinuations made by the prosecution that the petitioner had possibly committed the crime of statutory rape; and (6) his trial attorney failed to get a list of the entire prior criminal record of a witness whose testimony implicated the petitioner, and then failed to impeach the credibility of a co-defendant witness with convictions in more than thirty (30) bad check offenses, a theft offense and a prior drug charge.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Momon v. State , 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins, 911 S.W.2d at 347. This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The trial court's findings of fact are as follows:

> In the amended petition, [defense counsel] alleged that appointed counsel, appointed trial counsel, [ ], was ineffective and therefore a new trial should be granted. As a matter of fact, this was [her] first criminal jury trial. However, it was shown that prior to the trial she consulted with Mr. Guy Dotson, Sr., retired DA from this judicial district, and at trial her law partner, [ ], assisted her.
>
> In voir dire it was alleged [trial counsel] did not get answers to her questions on the record and that a young black male juror was excused without objection from her. In the record it's clear that none of the prospective jurors had any problems with the questions that [trial counsel] asked, and the record also reflects the State did not challenge any jurors and that the Defense objected to one for cause and made six peremptory challenges after consulting with her client.

It was further alleged that [trial counsel] did not impeach codefendant Willie P. Martin by use of any of his extensive prior record. [Trial counsel] did in fact ask Mr. Martin about his theft and passing worthless check convictions that dealt with dishonesty.

However, some of his testimony was favorable to Mr. Bigsby in that he testified that he did not see Mr. Bigsby sell any cocaine. It appears that it was a trial strategy not to bring out his entire prior record.

And at one point Mr. Martin was asked, Why did you come to Murfreesboro? He answered, We came to sell drugs, which was responsive to the question asked.

It was further alleged that [trial counsel] did not get a copy of Mr. Martin's guilty plea, and she agreed that she did not. However, it was shown that she had the court reporter read back his statement prior to trial and that his testimony at trial was basically the same as the testimony given a few days before the trial herein at his guilty plea.

At one point in the trial, Mr. Bigsby's cousin was asked how long Mr. Bigsby and the codefendant had been together, and he answered that he [sic] it had been since she was about 15 and that she was 21 now. And nothing was ever said in the trial before the jury about statutory rape.

Further, it was alleged that [trial counsel] failed to interview the TBI forensic scientist prior to the trial. She had a copy of Special Agent Glen Glenn's report, and there as no issue as to whether it was cocaine or not. Therefore, there was no prejudice shown.

Further, that she allowed an evidence log to be introduced into evidence without objection, and the evidence log was signed by everyone who was there. And on the bottom of the log was a statement signed by a codefendant, Ms. Blivins [sic], that stated that "The cocaine as [sic] all hers, know lie," spelled K-N-O-W. Therefore, it was favorable to the Defendant herein. There was testimony at the hearing that [appointed trial counsel] had discussed the plea bargain offered by the State with Mr. Bigsby and went over what he might get if he went to trial and that Mr. Bigsby turned it down. Mr. Bigsby agreed with [appointed trial counsel] in his testimony. Further, that [appointed trial counsel] improperly withdrew from representing Mr. Bigsby following the trial. In fact, Mr. Bigsby advised her in a conference call with his brother that his brother had retained [retained trial counsel] of the Nashville Bar to handle the motion for a new trial and the appeal. And during the phone call Mr. Bigsby's brother threatened [appointed trial counsel] and the Judge, using extremely foul language.

And Mr. Bigsby's brother never paid [retained trial counsel] in spite of [retained trial counsel's] repeated letters and communication that he needed money to file the paperwork for the new trial motion. [Retained trial counsel] did file a motion for a new trial on the last day without ever having been paid. After the threats and notice of a new attorney, I felt that it was proper for [appointed trial counsel] to be excused from further representation of Mr. Bigsby.

The Court appointed [appointed appellate counsel] of the Murfreesboro Bar to handle the appeal. Further, it was shown that [appointed trial counsel] interviewed all of the witnesses, except for one, which she was unable to locate.

And from all of the testimony of sworn witnesses at the hearing as well, I feel that [appointed trial counsel] was within the standards of competence required by law and that there was no showing that there was prejudice to the Defendant herein.

As stated above, the post-conviction court's findings of fact are conclusive on appeal so long as the evidence at the post-conviction hearing does not preponderate against the trial court's findings. In the case sub judice, the evidence presented at the hearing supports the trial court's findings of fact.

### Failure to object to evidence seizure log

The petitioner argues that his appointed trial counsel was ineffective in not objecting to the introduction of the evidence seizure log. This log contained the signatures of the petitioner, as well as several others. At the post-conviction hearing, appointed trial counsel testified that she did not object to the introduction of the log because the petitioner's signature merely showed that he was present when the drugs were seized. The strategy at trial was not to dispute that the petitioner was present at the time of the seizure. Trial counsel also testified that she believed the evidence log would actually help the petitioner at trial because the log supported the defense strategy that the drugs belonged to April Blivens, one of the petitioner's co-defendants.

Trial counsel's failure to object to the introduction of the evidence seizure log was clearly based on trial strategy. We conclude that this is a reasonably-based trial strategy. Therefore, trial counsel's failure to object to the introduction of the evidence log was not deficient performance. Because the petitioner cannot show that trial counsel's performance was deficient and prejudicial, he has not shown that his rights to the effective assistance of counsel were violated by this action of his trial counsel.

### Failure to explain to the petitioner the potential sentence if he were convicted.

The petitioner also argues that his trial counsel was ineffective because she neglected to advise him that he could receive a twenty-five year sentence if convicted of possession of cocaine with the intent to sell because he was a persistent offender. Trial counsel testified at the post-

conviction hearing that she did tell the petitioner what his maximum sentence would be if he was sentenced as a persistent offender. The petitioner also stated, "She said something like that. I think she did," when he was asked if trial counsel had informed him of his potential sentence. The petitioner also testified that he was not aware that he could have received twenty-five (25) years.

The trial court obviously credited the testimony of trial counsel. The evidence presented at the post-conviction hearing does not preponderate against the trial court's findings. See Momon, 18 S.W.3d at 156, Henley, 960 S.W.2d at 578-79. Therefore, we conclude that this situation does not constitute ineffective assistance of counsel.

### Failure to properly interview a key witness

The petitioner also argues that his trial counsel failed to interview his co-defendant, Willie Martin, or investigate statements that Mr. Martin made when he pled guilty to his involvement in the crime. The petitioner maintains that by interviewing his co-defendant and obtaining statements made at his guilty plea, that she would be able to anticipate what Mr. Martin would testify to at the petitioner's trial.

The petitioner's trial counsel testified regarding this issue at the post-conviction hearing. She stated that she did interview Mr. Martin in the hallway on the day of trial in November. She also spoke with the co-defendant, in the presence of his attorney, in August before the petitioner's trial. Trial counsel admitted that she did not obtain a transcript of Mr. Martin's guilty plea hearing, but she did call the court reporter and have the reporter read Mr. Martin's statement at his guilty plea hearing.

To be successful on a petition for post-conviction relief, the petitioner must show that his trial counsel's performance was deficient and that this deficient performance was prejudicial. Contrary to the petitioner's assertions, trial counsel testified that she did interview Mr. Martin, on more than one occasion. In addition, she also gathered the information from the guilty plea hearing. The trial court clearly found trial counsel's representation adequate in this regard. We agree with this assessment and find that the evidence supports the trial court's findings. Because the petitioner cannot show that trial counsel's performance was deficient and prejudicial, he has not shown that his rights to the effective assistance of counsel were violated by this action of his trial counsel.

### Failure to object to co-defendant's trial testimony

The petitioner also argues that his trial counsel offered ineffective assistance of counsel because she failed to object to a statement made by Mr. Martin at trial. At trial, the State asked Mr. Martin why he came to Murfreesboro. Mr. Martin replied, "[W]e came to sell drugs." The petitioner argues that trial counsel was ineffective in objecting to this exchange because Mr. Martin's answer was unresponsive to the question.

When we read this exchange, we find that Mr. Martin's reply, if true, which it apparently is, is actually responsive to the question. We agree with the petitioner that this evidence is damaging, but every piece of damaging evidence is not objectionable. The petitioner has not shown us how this answer is unresponsive to the question. Therefore, we find that trial counsel's failure to object to this exchange was not deficient performance. We also conclude that her failure to object to the statement could be considered a trial strategy. If she had futilely objected to the statement, she would have called more attention to it. Therefore, we find that trial counsel's failure to object was not ineffective assistance of counsel.

### Failure to object to prosecutor's insinuations that petitioner committed statutory rape

The petitioner next argues that his trial counsel was ineffective because she did not object to the suggestion that the petitioner committed statutory rape. The petitioner refers to an exchange during the testimony of Demetrius Blivens, the petitioner's girlfriend's cousin. During his testimony, Mr. Blivens stated the petitioner and his girlfriend had been dating since she was fifteen (15). The petitioner now argues that this reference to his girlfriend's age implies that he had committed statutory rape.

The trial court noted in its findings of fact that nothing was said to the jury specifically accusing the petitioner of statutory rape. There was merely a statement as to the petitioner's girlfriend's age when they began dating. We do not think that this constitutes an allegation of statutory rape as maintained by the petitioner. Therefore, trial counsel's failure to object to this statement was not ineffective assistance of counsel.

### Failure to get a list of entire criminal record of a witness

Finally, the petitioner argues that trial counsel was ineffective by failing to impeach Mr. Martin with his entire prior criminal record. Trial counsel stated at the post-conviction hearing that she limited her impeachment of Mr. Martin to his convictions for passing worthless checks and larceny. She stated that she did not impeach him on his entire record because, "his testimony helped the case more than . . . it hurt it." For instance, Mr. Martin testified that the petitioner did not sell the drugs and that the drugs were the property of April Blivens. Trial counsel also testified that she knew Mr. Martin had a lengthy record, but she did not obtain a list of all his convictions.

Trial counsel's decision to not rely on Mr. Martin's entire record to impeach him was clearly a trial strategy. Trial counsel obviously concluded that Mr. Martin's testimony helped more than it hurt the petitioner's case and she therefore did not want to destroy his credibility completely. This is a reasonably-based trial strategy. Trial counsel's performance was not ineffective assistance of counsel.

## CONCLUSION

The petitioner has been unable to prove that trial counsel's representation amounted to ineffective assistance of counsel. For this reason, the petitioner's issues are without merit. For the foregoing reasons, we affirm the judgment of the trial court.


_____
JERRY L. SMITH, JUDGE